## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| KATHIE LIVINGSON and NATURE ADVENTURE OUTFITTERS INC.,      ) ) ) | |
| Plaintiff,      ) ) | No. 2:15-cv-00564-DCN |
| vs.      ) ) | **ORDER** |
| UNITED STATES OF AMERICA, UNITED STATES FISH AND WILDLIFE SERVICE, RAYE NILUS, individually and in her official capacity, SARAH DAWSEY, individually and in her official capacity, RYAN K. WAGNER, individually and in his official capacity, CHIRSTOPHER CROLLEY d/b/a Coastal Expeditions,      ) ) ) ) ) ) ) ) ) | |
| Defendants.      ) ) | |
| _____ ) | |

The following matters are before the court on defendants United States of America, United States Fish and Wildlife Service, Raye Nilus, Sarah Dawsey, and Ryan Wagner's ("defendants") motion to reconsider the court's March 31, 2016 order, and plaintiffs' motion to alter or amend the court's March 31, 2016 order. For the reasons set forth below, the court grants defendants' motion to reconsider, and denies plaintiffs' motion to alter or amend.

## I.  BACKGROUND

The Cape Romain National Wildlife Refuge (the "Refuge") was created by Congress under the Migratory Bird Conservation Act in 1932. Am. Compl. ¶ 20. Pursuant to 16 U.S.C. § 668dd et seq., the Refuge is now administered by the Secretary of the Interior and defendant United States Fish and Wildlife Service (the "FWS") as part of the National Wildlife Refuge System. The Refuge was expanded

1

in 1991, when the United States entered into a 99 year lease with the South Carolina

Budget and Control Board to acquire the following property:

> [A]ll of the State of South Carolina's interest in all marsh lands, sand banks, shores, edges, lands uncovered by water at low tide, and all waterbottoms and waters which are included within the boundaries of the [Refuge], or which are contiguous and adjacent to the easterly boundary and fronting on the Atlantic Ocean at mean low tide.

Pls.' Mot. Ex. A.  This grant was made subject to "existing easements for canals,

ditches, flumes, pipelines, railroads, public highways and roads, telephone, telegraph,

power transmission lines and public utilities."  Id.  The South Carolina Constitution

guarantees that "[a]ll navigable waters shall forever remain public highways."  S.C.

Const. Art. XIV, § 4

Plaintiff Kathie Livingston ("Livingston") operates a for profit business,

Nature Adventure Outfitters, Inc. ("NAO," together with Livingston, "plaintiffs"),

which takes customers on nature tours, by kayak and otherwise, through various

locations in the South Carolina Lowcountry.  Am. Compl. ¶ 1.  Certain NAO tours

once passed through the waters of the Refuge, though they did not go onto Refuge

land.  Id. ¶ 25.  Plaintiffs contend that, since October 2013, the FWS, along with

Sarah Dawsey ("Dawsey"), the Refuge manager, Raye Nilus, her supervisor, and

Ryan K. Wagner, the Refuge law enforcement officer, have prevented plaintiffs from

conducting tours through the Refuge waters without a Special Use Permit.  Id. ¶¶ 2–5,

22, 23.  Plaintiffs further contend that this restriction was instituted by Dawsey to

extend a competitive advantage to her close friend, defendant Chris Crolley

("Crolley"), who operates a competing tour company and holds an exclusive

franchise to take customers onto Refuge land.  Id. ¶ 27.

Plaintiffs filed the instant action on February 6, 2015 and amended their complaint on March 20, 2015.  The Amended Complaint brought claims for: (i) violation of plaintiffs' Fifth Amendment right to due process, pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971); (ii) violation of the South Carolina Unfair Trade Practices Act ("SCUPTA"); and (iii) a writ of mandamus pursuant to 28 U.S.C. § 1361, requiring defendants to allow free navigation of Refuge waters.  <u>Id.</u> ¶¶ 17–48.  Defendants filed a motion to dismiss plaintiffs' <u>Bivens</u> claim on August 17, 2016, ECF No. 35, and plaintiffs filed a motion for summary judgment on their mandamus claim on October 12, 2015.  ECF No. 41.  Defendants never formally moved to dismiss plaintiffs' mandamus claim, but did argue that the court lacked subject matter jurisdiction over that claim in its response to plaintiffs' motion for summary judgment.  ECF No. 44 at 8.  The court entered an order on March 31, 2016, granting defendants' motion to dismiss plaintiffs' <u>Bivens</u> claim, and denying plaintiffs' motion for summary judgment on the mandamus claim (the "Order").  ECF No. 58.  On April 11, 2016, defendants filed the instant motion to reconsider.  ECF No. 61.  On April 25, 2016, plaintiffs incorporated their response into their separate motion to alter or amend.  ECF No. 63.  Defendants filed a dual reply in support of their motion to reconsider and response to plaintiffs' motion to alter or amend on May 12, 2016.  ECF No. 65.  The court held a hearing on the matter on December 8, 2016, and the matter is now ripe for the court's review.

## II.  STANDARDS

### A.      Rule 59(e)

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  While Rule 59(e) does not supply a standard to guide the court's exercise of its power to alter or amend, the Fourth Circuit has recognized that a court may grant a Rule 59(e) motion "only in very narrow circumstances:  (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law or prevent manifest injustice." Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002).  Rule 59(e) motions may not be used to make arguments that could have been made before the judgment was entered. See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Moreover, "[a] party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such a motion should not be used to rehash arguments previously presented or to submit evidence which should have been previously submitted."  Sams v. Heritage Transp., Inc., No. 2:12-cv-0462, 2013 WL 4441949, at *1 (D.S.C. August 15, 2013).

Rule 59(e) provides an "extraordinary remedy that should be used sparingly." Pac. Ins. Co., 148 F.3d at 403 (internal citation omitted); Wright v. Conley, No. 10-cv-2444, 2013 WL 314749, at *1 (D.S.C. Jan. 28, 2013).  Whether to alter or amend a judgment under Rule 59(e) is within the sound discretion of the district court.  Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005).

### B.     Rule 54(b)

Federal Rule of Civil Procedure 54(b) states, in relevant part, that

> [A]ny order or other decision, however designated, that adjudicates
> fewer than all the claims or the rights and liabilities of fewer than all
> the parties does not end the action as to any of the claims or parties
> and may be revised at any time before the entry of a judgment
> adjudicating all the claims and all the parties' rights and liabilities.

A "judgment," within the meaning of Rule 54, "includes a decree and any order from which an appeal lies."  Fed. R. Civ. P. 54(a).  A motion brought under Rule 54(b) is judged by similar standards as a motion brought under Rule 59(e), which may only be granted for the following reasons:  "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  Grayson Consulting, Inc. v. Cathcart, No. 2:07-cv-00593-DCN, 2014 WL 587756, at *1 (D.S.C. Feb. 14, 2014) (quoting Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)); Slep-Tone Entm't Corp. v. Garner, 2011 WL 6370364, at *1 (W.D.N.C. Dec. 20, 2011).

### III.   DISCUSSION

### A.     Defendants' Motion for Reconsideration

Defendants ask the court to reconsider the Order and hold that it lacks subject matter jurisdiction over plaintiffs' mandamus claim.  Defs.' Mot. 2.  An action for a writ of mandamus may be brought under 28 U.S.C. § 1361, which provides that

> [t]he district courts shall have original jurisdiction of any action in the
> nature of mandamus to compel an officer or employee of the United
> States or any agency thereof to perform a duty owed to the plaintiff.

"To establish jurisdiction under Section 1361, the complaint must state 'nonfrivolous allegations of the existence of the essential elements supporting a mandamus action.'"

Washington v. SSA Cooper, LLC, No. 2:13-cv-0393, 2014 WL 971766, at *4 (D.S.C.
Mar. 10, 2014) (quoting In re First Fed. Sav. and Loan Ass'n of Durham, 860 F.2d
135, 140 (4th Cir. 1988)).

> To establish the conditions necessary for issuance of a writ of
> mandamus, the party seeking the writ must demonstrate that (1) he has
> a clear and indisputable right to the relief sought; (2) the responding
> party has a clear duty to do the specific act requested; (3) the act
> requested is an official act or duty; (4) there are no other adequate
> means to attain the relief he desires; and (5) the issuance of the writ
> will effect right and justice in the circumstances.

U.S. ex rel. Rahman v. Oncology Associates, P.C., 198 F.3d 502, 511 (4th Cir. 1999).

In their motion for summary judgment, plaintiffs argued that they hold
easement rights in the Refuge waters pursuant in Article XIV, Section 4 of the South
Carolina Constitution, which states that "[a]ll navigable waters shall forever remain
public highways free to the citizens of the State and the United States," and that these
rights were protected by 1991 lease, which provides that the FWS's leasehold interest
will remain subject to "existing easements for . . . public highways."  ECF No. 41 Ex.
A.  Plaintiffs further argued that the defendants' interference with these easement
rights is prohibited by the Fifth Amendment, and thus, plaintiffs possess a clear right
to navigate the Refuge waters free from FWS interference and are entitled to a writ of
mandamus requiring the FWS to allow free navigation of the Refuge waters.  ECF
No. 41 at 15.  Crucially, plaintiffs rejected any suggestion that they could simply
apply for a Special Use Permit to conduct tours in the Refuge waters, arguing that the
government lacks any authority to impose the permit requirement.  ECF No. 48 at 4.
Thus, plaintiffs' claim for mandamus attacked the entire permit system, not the
FWS's decision to issue or deny a particular Special Use Permit in any particular

situation.  Defendants argued that "[the] [c]ourt may lack subject matter jurisdiction" over the mandamus claim.[1]  ECF No. 44 at 10, 14.

In its Order denying plaintiffs' motion for summary judgment, the court rested its decision on two alternative findings.  The court first found that the FWS's regulation of the navigable waters in the Refuge was authorized under 50 C.F.R. § 27.97, which provides that "conducting a commercial enterprise on any national wildlife refuge is prohibited except as may be authorized by special permit."  Id. at 8–9.  The court reasoned that the nature of plaintiffs' rights in the Refuge waters did not immunize them from FWS regulatory authority over activity conducted "on" Refuge waters, explaining that:

> Simply because one holds an easement over another's property interest, it does not follow that one is not "on" another's property when exercising rights under said easement. Easements simply allow one person to use the property of another; they do not somehow change the essential character of that property when they are exercised.  Windham v. Riddle, 672 S.E.2d 578, 582 (S.C. 2009) ("An easement is a right which one person has to use the land of another for a specific purpose, and gives no title to the land on which the servitude is imposed." (quoting Douglas v. Med. Investors, Inc., 182 S.E.2d 720, 722 (S.C. 1971))); EASEMENT, Black's Law Dictionary (10th ed. 2014) ("[A]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose.").  Because the lease granted the FWS an interest in the "waters which are included within the boundaries of the [Refuge]," plaintiffs are clearly "on" Refuge waters when they exercise their rights under the easement. Thus, recognizing the existence of plaintiffs' easement rights does not invalidate the FWS's regulatory authority, because plaintiffs come within the scope of [50 C.F.R.] §§ 25.11 and 27.97 when exercising such rights.

Order at 9–10.

---

[1] Defendants offered a number of other arguments in opposition which are not relevant for the purposes of the instant motion.

The court then found that, even if it were to assume that the plaintiffs' kayak tours were not considered to be "on" the Refuge, the Property Clause of the United States Constitution authorized the FWS to expand the application of 50 C.F.R. § 27.97 to non-federal property to the extent "reasonably necessary" to protect the Refuge. See id. at 13 (quoting McGrail & Rowley, Inc. v. Babbitt, 986 F. Supp. 1386, 1394 (S.D. Fla. 1997)). Recognizing that, on this view, the propriety of the FWS's decision to impose the special permit requirement depended on the factual basis for that decision, the court held that it was unable to decide whether the FWS had exceeded its regulatory authority without the benefit of discovery. Id. at 13–14.

These alternative findings were sufficient to deny plaintiffs' motion for summary judgment. However, defendants now move for reconsideration of the Order to address their argument that the court lacks subject matter jurisdiction to hear plaintiffs' mandamus claim at all. ECF No. 61 at 5. Because the court's subject matter jurisdiction under Section 1361 is dependent on the plaintiffs' ability to plead "nonfrivolous allegations" as to each of the essential elements of the mandamus claim, defendants argue that the court lacks jurisdiction based on the court's finding that "plaintiffs do not have a clear and indisputable right to the relief sought." Order at 7 n. 4. This language comes from a footnote explaining that the court was basing its decision to deny plaintiffs' motion on the "clear and indisputable right to relief" element of the mandamus action. Id.; see also Rahman, 198 F.3d at 511 (listing essential elements of mandamus action). While the court did "find[] that plaintiffs do not have a clear and indisputable right to the relief sought," Order at 7 n. 4, it should have stated that "plaintiffs have failed to establish that they possess a clear and

indisputable right to relief." This would have been more precise and consistent with the court's intent and the ultimate disposition of the claim. Thus, defendants overstate the significance of footnote 4.

Nevertheless, defendants highlight a legitimate problem in the court's order—while resolving plaintiffs' motion for summary judgment did not compel the court to choose between its two alternative findings, this choice was necessary to resolve the subject matter jurisdiction issue raised in defendants' brief. This is because one alternative allows the court to conclusively resolve plaintiffs' mandamus claim, while the other leaves the issue open to a factual inquiry. If plaintiffs' tours are considered to occur "on" the Refuge within the meaning of 50 C.F.R. § 27.97, then the FWS's permit requirement is clearly authorized and plaintiffs have no room to argue that they possess any right to a writ of mandamus. On the other hand, if the plaintiffs' tours cannot be said to occur on the Refuge itself, then the FWS's authority to impose the permit requirement depends on a factual inquiry into whether such actions were "reasonably necessary." If the court reaches this factual inquiry, plaintiffs must be given an opportunity to show that the FWS clearly exceeded its authority, and the court cannot dismiss the mandamus claim.[2]

---

[2] It might be argued that if the propriety of the regulation is dependent on the FWS's assessment of its necessity, then mandamus relief is inappropriate because plaintiffs' right to relief and defendants' obligation to act—or refrain from acting—are not sufficiently clear. However, "even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated." Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419, Bhd. of Painters & Allied Trades, AFL-CIO v. Brown, 656 F.2d 564, 566 (10th Cir. 1981) (quoting Davis Associates, Inc. v. Secretary, Department of Housing and Urban Development, 498 F.2d 385, 389, 389 n. 5 (1st Cir. 1974)).

Having revisited the issue, the court finds that plaintiffs' tours were conducted "on" federal property, such that 50 C.F.R. § 27.97 applies without any inquiry into the whether the regulation of non-federal property was "reasonably necessary." <u>See</u> Order at 9–10.  The court stands by its conclusion that plaintiffs' tours were conducted "on" Refuge waters within the meaning of 50 C.F.R. § 27.97, and thus, were plainly subject to the FWS's authority to require a Special Use Permit.  <u>Id.</u>  The court now finds that this necessarily precludes plaintiffs from establishing a "clear and indisputable right to relief." <u>Rahman</u>, 198 F.3d at 511.  Thus, plaintiffs have failed to plead "nonfrivolous allegations of the existence of the essential elements supporting a mandamus action." <u>Washington</u>, 2014 WL 971766, at *4 (quoting <u>In re First Fed. Sav. and Loan Ass'n of Durham</u>, 860 F.2d at 140).

While the court recognizes that Rule 54(b) relief should only be granted in limited circumstances, the court finds such relief appropriate here because the issue raised by defendants' arguments goes to this court's subject matter jurisdiction. Indeed, even if the court were not inclined to consider defendants' request for reconsideration, the court would be obligated to revisit the issue <u>sua</u> <u>sponte</u>. <u>Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.</u>, 369 F.3d 385, 390 (4th Cir. 2004) ("[Q]uestions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised <u>sua</u> <u>sponte</u> by the court."). Therefore, the court grants defendants' motion for reconsideration and holds that it lacks subject matter jurisdiction over plaintiffs' mandamus claim.

**B.     Plaintiffs' Motion to Alter or Amend**

Plaintiffs ask the court to revisit two issues discussed in the court's Order: (1) whether the lease can permit the FWS to regulate areas subject to easements referenced in the lease while simultaneously barring the FWS from regulating commercial fishing and shell fish gathering, and (2) whether <u>Dunbar Corp. v. Lindsey</u>, 905 F.2d 754, 761 (4th Cir. 1990), requires this court to recognize plaintiff's <u>Bivens</u> claim.  The court finds that plaintiffs have not provided any compelling reason to revisit these issues, which were both addressed in the parties' briefs and by the court's Order.

**1.     Effect of the Lease**

As outlined above, the lease granting the United States its interest in the Refuge waters was made subject to "existing easements for canals, ditches, flumes, pipelines, railroads, public highways and roads, telephone, telegraph, power transmission lines and public utilities."  ECF No. 41 Ex. A.  The lease also provides that the United States' interest is subject to "[t]he right of the State of South Carolina to authorize the taking of shellfish, finfish, and other salt water species within the [R]efuge boundary."  <u>Id.</u>  Plaintiffs argue that the court should address the "fundamental inconsistency" in defendants' position that "on the one hand [] it is barred by the lease from regulating commercial fishing and shellfish gathering by express language in the lease, but on the other, [] it may disregard the equally express language of the lease preserving the public highways and easements."  ECF No. 63 at 2–3.

This is not the first time plaintiffs have offered this argument, and it would not be the first time the court has considered it. In their motion for partial summary judgment, plaintiffs attacked Dawsey's explanation of their authority to impose the special permit requirement as inconsistent, inasmuch as it "acknowledges the exemption from the lease of commercial fishing and shellfishing, [but] ignores the exemption for easements for public highways, which includes the public's easement for navigation of public navigable waters." ECF No. 41 at 13. In the Order, the court explicitly addressed this argument:

> Plaintiffs also contend that defendants' argument is inconsistent: on one hand, defendants recognize that they lack the power to regulate commercial fishing or shell fishing, but on the other, they contend that they can regulate plaintiffs' navigation of the Refuge waters, though both are protected under the lease. However, the power to regulate commercial fishing was reserved through a separate clause which spoke directly in terms of regulatory authority, not property interests. Because plaintiffs claim defendants' regulatory authority was constrained by solely [sic] their property rights, the court finds the above analysis applicable regardless of how that analysis might change if applied to the regulation of commercial fishing or shell fishing.

Order at 13 n. 7. Effectively, the court found that it was unnecessary to decide the scope of the FWS's regulatory authority over commercial fishing or shellfishing to decide the issue before it. Plaintiffs ask the court to revisit this question now, arguing that it is an issue of significant "public importance," and even suggesting that if the lease prevents the FWS from regulating the commercial fishing and shell fishing industry, plaintiffs may "adjust their business so as to offer these services to customers by including fishing tours and equipment." ECF No. 41 at 3.

These reasons are not compelling. First, it is quite clear that this issue was already addressed by the court's Order, and "[a] party's mere disagreement with the court's ruling" does not warrant relief. Sams, 2013 WL 4441949, at *1. Moreover,

the reasons plaintiffs offer for revisiting the issue highlight the advisory nature of their request. The current controversy does not involve commercial fishing or shellfishing, and no matter how important the issue may be to the public—or plaintiffs' future business ventures—federal courts "do not render advisory opinions." Golden v. Zwickler, 394 U.S. 103, 108 (1969).

Therefore, the court declines to revisit the FWS's authority to regulate commercial fishing and shellfishing in the Refuge.

### 2.    **Bivens** Claim

Plaintiffs next ask the court to revisit its decision to dismiss their Bivens claim. Plaintiffs primarily question the court's analysis of Dunbar, 905 F.2d 754, which they rely on to argue that the court should recognize the availability of a Bivens claim in this action.[3] ECF No. 63 at 5–7. Again, plaintiffs' arguments have

---

[3] Plaintiffs also offer a two sentence argument addressing the court's qualified immunity ruling, stating:

> The Court also held at page 17 that the impropriety of the actions at issue were not "clearly established at the time" they were taken and the Federal Defendants are, therefore, entitled to qualified immunity as to the argument that they exceeded their lawful authority. The Plaintiffs respectfully suggest that without discovery to determine what prompted the Federal Defendants to take their actions, and a finding as to whether their actions were "reasonably necessary to protect the Refuge", it cannot be determined whether they are entitled to qualified immunity.

ECF No. 63 at 7. The subject portion of the Order found that because there were legitimate reasons to think that the FWS had the authority to regulate plaintiffs' tours through Refuge waters, a "reasonable officer" could have believed the special permit requirement was lawful. Order at 17. The court made this finding on the assumption that the officer was acting in good faith, and separately analyzed whether plaintiffs could bring a Bivens claim based on the defendants' alleged improper motives. Id. Plaintiffs appear to argue that it is possible that the decision to impose the special permit requirement may have been so baseless that no reasonable officer could have believed it fell within the FWS's authority to take actions "reasonably necessary to

already been raised and rejected.  <u>Sams</u>, 2013 WL 4441949, at *1 (stating that a Rule 59(e) "motion should not be used to rehash arguments previously presented").

At the hearing on defendants' motion to dismiss, the court ordered the parties to provide supplemental briefing on whether plaintiffs were entitled to bring a <u>Bivens</u> claim in this action.  In their supplemental brief, plaintiffs offered the same argument they offer now—that "<u>Dunbar</u>[] provides an instructive Fourth Circuit analysis of why the type of <u>Bivens</u> claim asserted by Plaintiffs is recognizable under the Supreme Court's criteria."  ECF No. 56 at 3.  The Order rejected this argument.  The court began by outlining the criteria used to assess the availability of a <u>Bivens</u> claim in a particular case, explaining:

> first, the court must determine "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages," and in the absence of such an alternative, "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed[] [] to any special factors counselling hesitation before authorizing a new kind of federal litigation."

Order at 19 (quoting <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007)).  The court analyzed the availability of alternative remedies in this case and concluded that plaintiffs already possessed an "alternative, existing process" for challenging the FWS's application of the permit requirement.  <u>Id.</u> at 22.  The court then analyzed plaintiffs' reliance on the <u>Dunbar</u> decision, expressing some concern over whether <u>Dunbar</u>'s analysis was even appropriate in light of <u>Wilkie</u>'s "more restrictive" formulation of the <u>Bivens</u> test.  <u>Id.</u> at 23.  The court then found that <u>Dunbar</u> was

---

protect the Refuge."  ECF No. 63 at 7.  The court finds that any plausible application of this theory to this case would be properly analyzed as an "improper motive" claim.  Thus, plaintiffs' argument proposes a hypothetical that was already addressed by another portion of the Order.  Order at 17–24.

distinguishable from the instant case, based on the <u>Dunbar</u> court's finding that the plaintiff had no adequate, alternative means of protecting its constitutional rights. <u>Dunbar</u>, 905 F.2d at 763.

Plaintiffs' motion to alter or amend simply parrots the same argument offered at the motion to dismiss stage. Plaintiffs set forth the criteria for determining whether a <u>Bivens</u> claim is available, outline the facts and holding of the <u>Dunbar</u> decision, and apply it to the facts of this case. <u>Compare</u> ECF No. 56 (plaintiffs' supplemental memorandum) <u>with</u> ECF No. 63 (plaintiffs' motion to alter or amend). The only new argument plaintiffs offer is a brief attempt to distinguish the facts of <u>Wilkie</u>. Of course, the court was well aware of the facts of the <u>Wilkie</u> case when it issued the Order. <u>See</u> Order at 21 (discussing <u>Wilkie</u> decision). In any event, plaintiffs fail to address the reason the court emphasized <u>Wilkie</u> and distinguished <u>Dunbar</u>—the availability of alternative processes for challenging the FWS's application of the permit requirement.[4] Thus, even if the court were inclined to revisit the <u>Bivens</u> question, plaintiffs have not offered any reason for why the court should reach a different conclusion.

Therefore, the court declines to revisit plaintiffs' <u>Bivens</u> claim.

## C.    State Law Claims

Having determined that it lacks subject matter jurisdiction over plaintiffs' mandamus claim and declined to alter or amend its decision to dismiss plaintiffs' <u>Bivens</u> claim, the court is left with plaintiffs' SCUPTA claim against Crolley and

---

[4] Plaintiffs do state that "there is no adequate alternative remedy provided by Congress which would vindicate the Plaintiffs' property rights to navigate public navigable waters," ECF No. 63 at 7, but this is a conclusory assertion, not an argument.

certain state law counterclaims raised by Crolley.  See Am. Compl. ¶¶ 34–41; ECF No. 7, Crolley Answer ¶¶ 23–74.  Because plaintiffs and Crolley are all South Carolina citizens, the only basis for subject matter jurisdiction over these pendant state law claims is 28 U.S.C. § 1367(a), which states that if a district court possesses original jurisdiction in a civil proceeding, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  The statute further provides that a district court may decline to exercise such jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3).  The Supreme Court has held that, in situations such as this, when "the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (emphasis added).

Following this directive, the court dismisses plaintiffs' SCUPTA claim and Crolley's counterclaims without prejudice.

## IV   CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' motion to reconsider its March 31, 2016 order and **DISMISSES** plaintiffs' mandamus claim for want of subject matter jurisdiction, **DENIES** plaintiffs' motion to alter or amend, and **DISMISSES** the remaining state law claims and counterclaims without prejudice.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 21, 2016**
**Charleston, South Carolina**